Curia, per
Nott, J.
If the event of this motion depended alone on the ground taken for a new trial this court would not interfere with the verdict. There was a great deal of conflicting evidence of which it was the province of the jury to judge and the court is not dissatisfied with the result. But in the course of the investigation two other questions have been submitted to the consideration of the court.
1st. Whether by the terms of the deed the mill was conveyed to the defendant in the character or with the qualities of a mill so as to give him a right to keep up the pond to the injury of Mr. Pinckney of whom he bought, and of the present plaintiff who purchased from him.
2nd. If it was, whether the erection of the upper mill, the existence and enjoyment of which being incompatible with the use of the other, by means of this pond, did not amount to an extinguishment of that right? These *100 questions are equally new and important to the people of this country. They have been very ably and learnedly argued by the council on both sides. And if they are not. correctly decided it will be on account of their intrinsic difficulty and not because they have not received all the light of which they are susceptible.
On the first ground it has been contended, that the defendant has purchased the land only, “ with the rights, members and appurtenances thereunto belonging.” That the pond is not an appurtenance of the land. If it is appurtenant to any thing it must be to the mill, and could not pass without an express grant of the thing to which it is appurtenant. And as the mill is not specifically conveyed, it passes only under the general- descx-iption of land and not as a mill and therefore carries with it none of the appurtenances of a mill. This is a question of no inconsiderable importance in this state where the usual mode of conveyance is very short and simple. But as I have formed my opinion on the second ground I shall not go into a consideration of it at present.
I will pass on to the consideration of the question whether the defendant has not, by the erection of the new mill and the means connected with it, extinguished the right which he had of keeping up such a head of water as to overflow the plaintiff’s land?
In considering this question- it must be assumed that the defendant had a right to keep up the water to the height to which it was raised at the time he purchased, even though the consequences were the overflowing of the plaintiff’s land. I would nevertheless observe that every privilege of this sort which one man claims in derogation of the rights of another is viewed with jealousy by the law, and as an object not highly entitled to its favour. It will require, therefore, that it be confined to the pre~ scribed limits and specific objects of the grant,
*101 The priviege contended for is the right of keeping up a pond. The prescribed limits are the height to which it was kept at the time of the purchase, and the specific object that to which it was then applied; to wit, the support of the mill. The present object of our enquiry however is not whether General Hampton is still entitled to the enjoyment of that privilege, but whether that right has not become extinguished by subsequent circumstances. In the prosecution Of that enquiry, I shall make use of the word “ extinguishment ” as being in my opinion the best calculated to convey the idea I mean to express. It is also to be understood that I mean by that word an entire annihilation or destruction, and not a mere suspension, of the right. And I shall endeavor to show that a right of this sort (that is, an incorporeal herediament,) once extinguished is forever gone and cannot revive. That an extinguishment therefore for one moment is an extin-guishment forever.
Rights of this sort are denominated by the civil law “ servitudes” which is construed ‘c survitudes or services,” for I observe that it has received both constructions. It is a subject therefore on which we shall receive no little instruction from that source. For although the common law is the law of this state, and it is by the rules of the common law that this case is to be governed, yet the civil law may be resorted to by way of illustration. I will therefore first commence with the common law, and will then show that the principles there laid down, are equally well supported by the civil law.
The word “ extinct” Lord Coke says cometí) from the verb extingúete to destroy or put out, Co. Litt. 147-6. In Bacon it is said whenever a right or interest is destroyed or taken away by the act of God, operation of law or act of the party, this in many books, is called extinguishment, 3 Bacon Tit. Extinguishment. See also Terms do *102 la Ley and Jacob’s Law Dictionary under the same title, where a great number of cases are put, to shew the distinction between the extinguishment and the suspension of a right. And here it may be remarked, that an extin-guishment may be either by the act of God, operation of law, or the act of the party. And so rigid is the law, that the act of the party will eifect an extinguishment of a right where the act of God or of the law will only cause a suspension of it. And for the most obvious reason. The act of a party shall always be construed most strongly against himself, büt he shall not be injured by an act of God or of the law. The same distinction is made in the civil law. In the Code of Louisiana 246, after mentioning the various methods by which servitudes may be extinguished, it is said, that servitudes are extinguished when the things are in such a situation that they can no longer be used and when they remain perpetually in that situation. But if the things are re-established in such a manner that they may be used the servitude will only have been suspendedAnd in page 256, it is said, a servitude may be extinguished, by a renunciation of the party either express or implied; as permitting the party from whom the servitude is due to build a wall or house, &c.
The distinction between an extinguishment and suspension is very well illustrated by the two cases put by Domat, Lib. 1. Sec. 6. fo. 207. Tit. Services. If the proprietor of the land or tenement for which the service was established acquired the property of the land or tenement which serves, and afterwards sells it again, without reserving the service, it is sold free; for the service was annulled and is not re-established to the prejudice of the new purchaser.
But if between the land or tenement which serves and that to which the service is due there be another land or *103 tenement which hinders the use of the service, the service is suspended only while the obstacle remains. Here it is seen, that when the act, which prevents the service, is by the party himself, to whom the service is due, it is wholly extinguished. But when by another it is only suspended; because it was not his fault or neglect that it was not demanded. And that distinction will be found to run through all the books.
Let us now see what act of the party will amount to a renunciation or extinguishment of his right. That has indeed been shewn to a considerable extent by the cases which have been already adduced. But I will endeavor to show that it is a general principle both of the common and civil law, that any right may be destroyed, not only by an act of the party positively destructive of the right itself, but by an act incompatible with the nature or exercise of it. Thus., for instance, by the old common law the giving a bond for the payment of money by a master to his servant or villain, or bringing an action against him amounted to a manumission or extinguishment of his right of service, because such acts were inconsistent with the relation of master and servant, 2 Blk. Com. 92. By the civil law even admitting the servant to set at the. masters table amounted to a manumission, 1 Brown Civil Law 109. If one holding an office accept another inconsistent with it, even though it be an inferior one, it will be an extinguishment of the other, Millwood vs. Thatcher, 2 Term Rep. 81. By the marriage of an obligor with an obligee the debt is extinguished, 3 Bacon 107, Tit. Extinguishment. If any one stands by and see another build on his land without interposing his claim his right is extinguished, Tarrant vs. Terry, 1 Bay 240. East India Company vs. Vincent, 2 Atk. 83. So if a person have a right of way from one close to another and he grant the close to different persons his right is destroyed, Dill vs. *104 Balshorpe, Cro. Eliz. 300. All these eases, and many more which might be added if necessary, go to establish the general principle that two inconsistent rights can not exist together, and that the creation of a new and inconsistent right by the party himself, is an extinguishment of a former one. And having established the general principle it only remains to shew ;y particular cases the application of those principles to the case now under consideration. In 2 Jacob’s L. D. 448. Tit. Extinguishment, it is said, A. has a stream of water which runs through a leaden pipe, ifB. purchase the land and destroy the pipe, the water course is extinct, because by this he declares his intent and purpose that he will not enjoy them together. So a way is extinguished by unity and is not revived by severance, for which Bulstrode is cited. See also 1 B. & P. 373, Whaley vs. Thompson.
In the Louisiana Code it is said, “ servitudes are extinguished by renunciation or voluntary release of them by the owner of estate to whom they are due. This renunciation may be express or tacit. The release of the servitude is tacit when the owner of the estate to which it is due permits the owner of the estate charged with the servitude to build on it such works as presuppose an annihilation of the right,” 246, 258. From this authority it appears that two things are necessary to effect the object, 1. That the works constructed be of a permanent solid kind, such as “ a wall or edifice.” 2. That they present an absolute obstacle to every kind of exercise of the servitude. Now the case put by way of illustration is, “ when the owner of the Estate to which the servitude is due permits the owner of the estate charged with the servitude to build,” &c. But it will equally follow, and still more strongly as I have already shewn, when the owner himself who claims the servitude commits the act. Thus in the case from Jacobs, L. D. where the stream of water *105 was diverted by the person entitled to the use of it having cut the pipe through which it was conveyed, it was held that the right was extinguished. Yet when a person has a right of way to a spring and the spring becomes dry, though the right eease for a time, if the spring chance to flow again the right revives, 1 Dorn. 206; which also supports the distinction before laid down between an act of the party and the act of God or of the law. And it appears to have been determined as early as the Year Books, that an incorporeal hereditament once extinguished can be revived only by a new grant. Year Book, 21 Ed. 3, 2. 2 Blk. Com. 177. And in the case of Marvin vs. Stone, 2 Cowen’s Rep. 807, Judge Southerland says, “ the rule is universal that when the remedy is suspended by the act of the party entitled to it, it is gone forever.” James vs. Morris Ib. 258. I do not mean that a person will lose a right by merely ceasing to use or exercise it, but he must do some act by which he secures to himself some other thing inconsistent with the enjoyment of the former. In Domat 218, it is said, “ if between two houses, one of which cannot be raised so high as to prejudice the prospect of the other, there stands a third house, which not being liable to the same service has been raised and does obstruct the said prospect, the proprietor of the house who owes the service may raise his.” The reason is; because the privilege has. become useless and cannot be enjoyed. But if the intervening house chance to be removed the service is recovered. But suppose he who claims the service should put up the intervening house himself, will it then be pretended that he can revive the service by pulling it down. I presume not. Because the obstacle raised by himself was of as permanent a nature as the estate to which the service was due. And in that case even the accidental falling of the house, much Jess the pulling of it down, by the party himself, could *106 not restore a right which he had voluntarily relinquished. And here also another distinction may be observed, that when a right is' suspended by the act of God, as by the drying up of the spring, it will revive again, if the spring chance to flow. But if it be suspended by the act of the party, as by building a house or wall, it would not be restored even though the obstacle should be removed by a stroke from heaven. I think therefore, from these considerations, that the two propositions with which I commenced are most conclusively established — 1. That a servitude is extinguished by any obstruction of a permanent nature by the party himself to whom the service is due, (or by his consent,) or by the voluntary acquisition or acceptance of any other right or privilege incompatible with the exercise or enjoyment of it. And %. That being once lost it is gone forever, and can never be revived but by a new grant. The principle will not apply where the obstruction is for a temporary purpose, even though formed of the most indestructable materials, nor when it is permanent if in aid of the other, even though they cannot be enjoyed at the same time, but must be exercised alternis visibus. Thus for instance, if the creek had be.en obstructed for the purpose of transporting a single crop across it, or a threshing machine had been erected for the use of the mill; even though the mill must have stood still during its operation, .because these would be considered only as different parts of the same system. It is only when from its nature the obstruction is permanent, or the use continuous and incompatible, that such a consequence will result. Let us then see whether the ease now under consideration is of that description.
It will be observed that the stream was entirely obstructed by a dam, so that even the merchant mill was not kept in operation by the water passing down the natural current of the creek. But it was diverted from its natural course *107 into two artificial canals, by whicli it was conveyed to the respective mills. And it is not pretended that the merchant mill could be kept in operation while the other was supplied with water through the natural channel of the creek. The -enjoyment of one therefore was incompatible with the use of the other.
Let us now.test the principle by supposing the plaintiff to have erected the same works with the consent of the defendant. Would it not have amounted to a destruction of his right ? Most unquestionably; because there would not have been a moment of time when he could have claimed the enjoyment of it. And in that case it will not be pretended that it would be restored by the accidental burning of the mill, or the blowing up of the dam. And is the principle less strong because it is the act of the defendant himself ? So far from it, upon every principle of law it operates more forcibly against him.
Hitherto the case has been considered as if between the defendant and Mr. Pinckney, of whom he purchased— But I think it of no unimportant consideration that the! present plaintiff was a purchaser for a bona fide conside-, ration at the time when the defendant had thus proclaimed \ to the world that the privilege which he now claims was i useless and even incapable of being enjoyed by him. j
But it is said the erection of the new building was not incompatible with the enjoyment of the original right, for it was still exercised and enjoyed by raising the water for the purpose of flowing rice. This argument is built on a total misconception of the foundation of defendants claim. It assumes for its basis, that the defendant had purchased the abstract right of overflowing the plaintiff’s land.— Now there is no evidence to justify such a proposition —- All that can be contended for is, that as he purchased the mill, the pond, dam, &c. passed with it; and that being entitled to the mill he is entitled to every thing that is ne * *108 ccssary to the enjoyment of it. Let us then suppose that the mill, dam, pond, &c. with all the right, members, and appurtenances, had been specifically conveyed, (and the defendant centairily cannot claim more by this deed,) what then would he have acquired ? Why the right of keeping up the pond for the purposes of the mill, but for no other purposte. Take for instance the case put by Do-mat. If a spring from whence a neighbor has a right to fetch water happens to be dried up he will lose the right to enter on the ground where the spring was. 1 Dom. 106. And for the most obvious reason. The object for which the 'entry was allowed having ceased, the right ceased with it. Thus if a person should have a right of way over another’s land to church, if the church should happen to be burnt, his right of way would cease. Nor would it revive though a theatre should be built in the same place. For his right of way was to church, and not to a theatre. The raising the pond for the purpose of flowing the rice, did not arise from any privilege connected with the use of the mill, but from the ownership of the soil, which conferred no right to throw the water back upon the plaintiff’s land. And not having been done in pursuance of the right now set up, can add no strength to the defence. Indeed the part of the ground where the pond was, having been converted into a rice field furnishes additional evidence of an intention to abandon it as a mill pond.
It is said that the flood gates were kept up during this whole period; but that is susceptible of the same answer; They were kept hanging to their hinges. But they were as completely divorced from the mill as if it had been burnt down. Indeed for the purposes of the question now under consideration, the mill must be considered as entirely annihilated, because it was kept in operation by means unconnected with the pond which is said to have *109 been purchased, and as unconnected with the flood gates as if they had been placed on the top of the Andes. Raising the water therefore occasionally, for the purpose of flowing the rice field furnishes no evidence of an intention to preservé the original right; but was calculated to authorise a contrary inference, as it was converted to another and different use, entirely distinct from the original object. .
In the course of the discussion the words forfeiture, abandonment, and extinguishment have been indiscriminately used. ' For instance it has been contended that the defendant has forfeited or abandoned his right, &c. These words have been made the subject of criticism on the other side. It is contended that they relate only to franchises, corporation rights, &c. and that a person can not abandon or forfeit a freehold by mere nonuser. But it will be observed that this is not a question on the construction of an instrument of writing in which the precise definition of words is to be ascertained. Whether the most appropriate terms have been observed throughout the discussion is therefore quite unimportant to the main object of our enquiry. But I observe that by the civil law writer’s these terms and others are indiscriminately used. In the Louisiana Code the title of the first chapter-on this subject commences, “ How servitudes are extin-; guished.” And in enumerating the several methods the fourth is, by the abandonment of that part of the estate? which owes the servitude. Justinian uses the words,: quibus modis finitur, by what method or in what manner it is terminated, Cooper J. 468. The language of Hein-. neccius on the Pandects is, Quern admodum servitutes amittunter, 247. Pothier in his Digest of the Pandects makes use of the same language, amittunter prediales gervitutes, Stc. 4 Pothier 352. The case therefore is not to be determined by a criticism upon words. I have che- *110 sen the word “ extinguishment,” whether it is most appropriate or not I do not know, but it appears to me to be sufficiently intelligible. But the defendants counsel are labouring under án error in supposing that the plaintiff claims front the defendant an abandonment or forfeiture of some part of his freehold or something incident or belonging to it. Neither of which is contended for. The defendant does not lose or abandon any part of his plantation by changing the use of it. And if he did the plaintiff would not acquire it. The plaintiff does not claim any thing from the defendant. The land overflowed was as much the property of the plaintiff when covered by the defendants mill pond as it is now- Instead of asking or taking any thing from the defendant he only claims the right of using or enjoying what is his own. The right to overflow the plaintiffs land is not even an incident to the defendants land any more than the roundness of a ball is incident to the matter of which it is composed. It is an incidental quality without which it may as well not exist. Drawing off the water does not effect the right of the land any more than cutting a slice from the ball does the matter which enters into its composition. It changes its quality, but may improve its value. That is a matter of which the party himself was alone entitled to judge. The defendant undoubtedly thought he was improving the value of his purchase by abandoning the lower mill and building the other. It was his own act and the plaintiff only claims the benefit resulting from it.
A servitude is required in this case by the defendant from the plaintiff of overflowing his land. That says the author above mentioned may be extinguished “ by abandoning that part of the estate which owes the servitude.” It was the plaintiff’s which owed the servitude, and that, the defendant has abandoned. Suppose that instead of a right to overflow his land it was a right of way to his own *111 and by erecting a mill he had overflowed his own land, so that the way had become useless, would it not have amounted to an extinguishment of his right? Is it not in principle the same as the case already mentioned of cutting off the pipe? The defendant has cut off a natural pipe by diverting the water into an artificial one for another and more useful purpose.
So far I háve endeavored to support my opinion by authority. But it is said that the common law is nothing more than common sense, or rather that it is the perfection of reason. Let us then consider the case apart from authority, and endeavor to illustrate it by a few cases addressed immediately to the understanding.
Suppose a person to be the owner of a house with an-tient lights which no person has a right to obstruct. If he erect a house or put up a wall directly covering his windows, has he not extinguished his light himself as effectually as if he had blowed out his candle?. It does not require a reference to Coke, Justinian, or Domat to establish that fact. Surely then it would amount to a license to his neighbor to put up a similar building on his adjoining lot. Suppose A. to have a right of way over the land of B. If he erect a house on his own land in such a manner as to obstruct the passage into the lands o^ B. does he not effectually destroy his right of way ? - Car he claim a right the enjoyment of which he has rendered impossible by his own act ? These cases are so plain that they must be comprehended by every one. Suppose in the case before us, the defendant instead of purchasing a mill pond with the right of flowing the plaintiffs land, had purchased.arrable Jand with a right of way, to haul away his crop. If he had erected the mill which he now has, and thrown the whole of his land under water by converting it into a pond, would he not have destroyed his right of way ? Must *112 Mr. Pinckney have kept open a road which terminated at an impassable lake; a way which the owner himself had voluntarily destroyed. It is impossible that such a position can be maintained. I will put but one other case to shew how a right may be extinguished by implication. — • Suppose General Hampton instead of purchasing the mill and mill pond had purchased the tract of land which Mr. Taylor now: owns, would not Mr. Pinckney by selling that land have destroyed his own mill ? By selling that part of the land with all the rights, members and appurtenances thereunto belonging without reserving the right of overflowing, he would have impliedly lost the right, because it would be inconsistent with the enjoyment of the thing which he had conveyed. And being once destroyed would never revive but by a new grant. And in what respect does the case now under consideration differ from those to which I have refeiTod ? The defendant has by his own free will and accord abandoned the privilege to which he was entitled. He has cut away his' dam, drawn off the water, and turned his pond into an arable field; he has obstructed the natural current of the creek, and turned it into other channels; he has built a permanent valuable mill on the land before overflowed by the pond; he has thus relinquished the privilege to which he was entitled, for these new born privileges of his own ci’eation, the enjoyment of which it is admitted is incompatible with the former state of things. For nine years has the claim now set up been dispensed with, and in all possibility, but for the accidental circumstance of the destruction of the new mill, a revival of it never would have been attempted. Indeed it ought not to be spoken of as a matter of coixjecture. No person in his senses would have erected a merchant mill in a mill pond. The very fact of having built on the land previously occupied by the pond carried with it irresistable evidence to all *113 the world that the pond was forever abandoned. And but for the unfortunate destruction of mill and the blowing up of the dam, the idea of reviving it never would have occurred. But if defendant’s right had not become extinguished, when would it have become so ? Might he revive it at any indefinite period ? W as the plaintiff bound to wait for fifty years, and leave his plantation a wilderness while the defendant was trying experiments, converting ponds into rice fields, and rice fields into mill ponds, until he had ascertained the success of all these experiments ? This is a question of great public interest, and it is time that it should be settled upon some known and fixed principles. It must be recollected that the plaintiff has rights as well as the defendant, and all he asks is that he should be permitted to enjoy these rights undisturbed. The defendant having made his election ought to be bound by it, and in my opinion had no further right to disturb the plaintiff in the full enjoyment of his property. I am satisfied with the verdict both as it regards the law and the facts, and the motion must therefore be refused. New Trial Refused.